**Robert E. SCHNEIDER, Jr., et al., Plaintiffs,**

v.

**COLEGIO DE ABOGADOS DE PUERTO RICO, et al., Defendants.**

**Civ. Nos. 82–1459(TR), 82–1513(TR), 82–1514(TR) and 82–1532(TR).**

United States District Court, D. Puerto Rico.

Aug. 21, 1987.

Pedro A. del Valle Ferrer, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for Secretaries of Justice and Treasury.

Harry Anduze Montaño, Santurce, P.R., for Colegio and Fundación de Abogados.

Miriam Naveira de Rodón, Santurce, P.R., José Julián Alvarez González, University of Puerto Rico, Río Piedras, P.R., and Salvador Antonetti, Jay García Gregory, San Juan, P.R., for Justices of Supreme Court.

## OPINION AND ORDER

TORRUELLA, Circuit Judge, Sitting by Designation.

These cases are again before this court after the period of abstention ordered by the First Circuit. *See Schneider v. Colegio de Abogados de Puerto Rico*, 565 F.Supp. 963 (D.P.R.), *stay of judgment denied*, 572 F.Supp. 957 (D.P.R.1983), *vacated*, 742 F.2d 32, 44 (1st Cir.1984) (ordering this court to abstain until "the Supreme Court of Puerto Rico has finally determined what remedy to provide or sooner in the unlikely event of

some unusual delay"). The Supreme Court of Puerto Rico has issued its final rule governing dissenters' rights in Puerto Rico's integrated bar. *See Colegio de Abogados v. Schneider*, 86 J.T.S. 60 (June 26, 1986). Accordingly, this court is poised to exercise its jurisdiction over plaintiffs' federal constitutional challenges to Puerto Rico's integrated bar and the new dissenters' rights rule. The defendant Colegio, however, has filed a motion to dismiss, to which the court must first respond.

*Background*

Rather than repeat in detail the long procedural history of this case and the history of the mandatory bar association in Puerto Rico, this opinion will merely refer to the numerous published opinions that relate to this case. This general dispute first began when the Colegio brought disbarment proceedings against Robert E. Schneider, Héctor Ricardo Ramos Díaz, Jorge F. Romany, and other lawyers who had not paid their mandatory dues to the Colegio. All the attorneys except Schneider and Ramos subsequently paid their dues and were no longer subject to disbarment. Schneider and Ramos were then the subject of an opinion of the Supreme Court of Puerto Rico directing them to pay their dues or be disbarred. *Colegio de Abogados de Puerto Rico v. Schneider*, 112 D.P.R. 540 (1982) (hereinafter referred to as the 1982 *Schneider–Ramos* opinion).

The 1982 *Schneider–Ramos* opinion determined the parties' current rights and obligations under the Puerto Rico integrated bar statute and the Puerto Rico constitution. In addition, the 1982 *Schneider–Ramos* opinion announced an impending rulemaking proceeding to reform the Colegio to protect the rights of dissenting members.

Schneider and Ramos refused to pay, notwithstanding the pending rulemaking, and were disbarred. They, along with the other plaintiffs (who had not been the subject of the 1982 *Schneider–Ramos* decision), then brought this case under 42 U.S.C. § 1983 alleging that Puerto Rico's integrated bar violates their federal constitutional rights. This court dismissed a

number of their claims and largely reduced the case to one seeking declaratory and injunctive relief from their prospective obligation to pay dues and belong to the Colegio. *See Schneider v. Colegio de Abogados*, 546 F.Supp. 1251 (D.P.R.), *aff'd in part, rev'd in part sub nom., In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir.1982). This court then decided the case on the merits, a decision that was regarded as improvident by the First Circuit in light of the pending rulemaking proceeding in the Supreme Court of Puerto Rico. *See Schneider v. Colegio de Abogados*, 565 F.Supp. 963 (D.P.R.1983), *vacated sub nom., Romany v. Colegio de Abogados*, 742 F.2d 32 (1st Cir.1984).

Now that the rulemaking is completed and the case is back before this court, the Colegio presents three arguments for dismissal. The Colegio suggests, first, that this court lacks jurisdiction because plaintiffs are seeking a review of a decision of the Supreme Court of Puerto Rico. The Bar then argues that, even if this court has jurisdiction, the plaintiffs' claims are precluded by res judicata and collateral estoppel. Finally, they claim that plaintiffs have not presented a case or controversy.

I. *Jurisdiction*

It has long been settled that the federal district courts do not sit in review of state court decisions, even on questions of federal law; the only appeal from a state supreme court decision is to the Supreme Court of the United States. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); 28 U.S.C. § 1257. The Colegio contends that this case falls within *Rooker's* prohibition, because plaintiffs are seeking a review of the Supreme Court of Puerto Rico's *Schneider–Ramos* decision.

This court considered essentially this same issue when this case was first brought in 1982. *See Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. at 1268. At that time the court wrote:

As to *prospective* enforcement, the [1982] *Schneider–Ramos* decision only

serves as a definite interpretation of a state statute by the highest court of Puerto Rico. Thus the consideration by this Court of the issues raised by the *prospective* enforcement of Law No. 43 cannot be interpreted as an appeal from a state court opinion, but is rather a new federal case in which the state court's interpretation serves to establish what is the substantive state law that is applicable.

*Id.* This ruling, which the defendants did not challenge in their earlier appeal, stands. *See Romany v. Colegio,* 742 F.2d at 37 n. 6; *see generally* 1B Moore's *Federal Practice* ¶ 0.404[1] (discussing law of the case); 18 Wright & Miller *Federal Practice and Procedure* § 4478 (1981). Since that time, however, the Supreme Court of the United States clarified its *Rooker* doctrine in *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and the Supreme Court of Puerto Rico issued a second opinion in *Schneider–Ramos* in 1986. Although neither of these developments has changed the jurisdiction of this court over this case, they merit careful attention.

In review, the 1982 *Schneider–Ramos* opinion held that Puerto Rico's mandatory bar law did not violate free speech and associational rights guaranteed by the Puerto Rico constitution, and that Schneider and Ramos must pay their dues or be disbarred. The court also directed the Colegio to develop a method, following the principles provided by the United States Supreme Court in cases such as *Abood v. Detroit Bd. of Ed.,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), to make sure that the dues of dissenting members such as Schneider and Ramos are not applied to ideological activities. 112 D.P.R. at 550, 556–57. *See also Romany,* 742 F.2d at 35–37. Schneider and Ramos continued to refuse to pay dues and were disbarred.

The Colegio submitted a proposed "remedy" which the Supreme Court of Puerto Rico did not adopt. Instead, the court appointed a special master to conduct evidentiary hearings to provide a basis for the promulgation of its own "remedy." The court issued a temporary "remedy" on November 13, 1984, and later reinstated Schneider and Ramos, who had indicated they would pay dues under the temporary "remedy." The Special Master held the hearings and submitted a report. The Supreme Court then announced in the 1986 *Schneider–Ramos* opinion its, apparently final, "remedy," which establishes an *Abood*-like rebate procedure.

Before going further, it is important to note what the plaintiffs challenge and what they do not challenge. They do not challenge the Supreme Court of Puerto Rico's individual treatment of either Schneider or Ramos, but rather challenge generally the mandatory bar requirement as it stands after the 1986 "remedy." Schneider and Ramos "do[ ] not question that [the mandatory bar statute and 'remedy'] appl[y] in [their] case, but rather contend[ ] that such [remedy] is unconstitutional in all cases." *Piper v. Supreme Court of N.H.,* 723 F.2d 110, 118 n. 1 (1st Cir.1983) (en banc) (Campbell, C.J., and Breyer, J., dissenting), *aff'd,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1983).

■ This distinction corresponds to the Supreme Court's distinction in *Feldman* between "challenges to state court decisions in particular cases arising out of judicial proceedings" and "general challenges to state bar rules, promulgated by state courts in non-judicial proceeding." 460 U.S. at 486. Challenges to the former may only be raised in an appeal to the United States Supreme Court, while challenges to the latter may be raised in federal district court in the same manner as challenges to any state statute or regulation. *Id.*

The key *Feldman* concepts relevant here are that of the "judicial proceeding" and the "particular case." If the 1986 "remedy" is the result of a "judicial proceeding" resolving a "particular case," then the federal district courts lack jurisdiction to consider whether it meets federal law requirements.[1] But if the 1986 "remedy" is a

---

1. The district court would still have jurisdiction, however, if the plaintiffs made an effective *Eng-*

general rule, promulgated by the Supreme Court of Puerto Rico in its administrative or legislative capacity as regulator of the attorneys who practice before its courts, then the federal district courts have jurisdiction to consider its constitutionality.

The twist here is that the Supreme Court of Puerto Rico promulgated a new rule as a purported "remedy" to a "particular case," the disbarment action brought against two lawyers who refused to pay dues. In the words of Justice Holmes, however, the determination whether a particular proceeding is judicial or nonjudicial "depends not upon the character of the body but upon the character of the proceedings." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908); *see also Lathrop v. Donahue*, 367 U.S. 820, 824, 81 S.Ct. 1826, 1828, 6 L.Ed.2d 1191, *reh'g denied*, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961). "The form of the proceeding is not significant. It is the nature and effect which is controlling." *In re Summers*, 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1915). In making "rules of general application" that act "not on parties litigant but on all who practice law" state supreme courts act in a nonjudicial manner, as "legislatures." *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (quoting *Consumers Union v. American Bar Ass'n*, 470 F.Supp. 1055, 1064 (E.D.Va.1979) (Warriner, J., dissenting)); *see also In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 23 (1st Cir.1982).

■ This court finds the "remedy" to be a rule promulgated in a nonjudicial proceeding. It looks like a rule, reads like a rule, and acts like a rule. It has four sections: a definitional section, a section creating a Review Board, a section announcing the procedures the Review Board shall follow, a section providing for the use of the proceeds of notarial and bar stamps, and a section making the rule applicable to all lawyers and retaining power to modify the rule. *See* 86 J.T.S. 60, Official Translation at 17–24. The "remedy" does not "investigate[ ], declare[ ], and enforce[ ] liabilities as they stand on present or past facts and under laws supposed already to exist," but rather "looks to the future and changes existing conditions by making a new rule to be applied thereafter." *Prentis*, 211 U.S. at 226, 29 S.Ct. at 69; *see In re Summers*, 325 U.S. 561, 566–67, 65 S.Ct. 1307, 1310–11, 89 L.Ed. 1795 (1945).

■ The "particular case" that the Supreme Court of Puerto Rico was asked to decide was whether Schneider and Ramos should be disbarred for failure to pay dues. In the process of adjudicating that case, the Puerto Rico court apparently became aware that the then existing application of the mandatory bar statute violated dissenting members' rights. Rather than permit Schneider and Ramos to practice law without being members of the Colegio, however, the court, apparently, decided to reform the Colegio to protect dissenters' rights, as the court interpreted those rights under the Puerto Rico Constitution. The court then combined its adjudication of Schneider's and Ramos' disbarment with its own bar reform, by holding that Schneider and Ramos must pay dues *and* that the Colegio must make sure none of their money is spent on ideological activities.[2] Thus, the 1982 *Schneider–Ramos* opinion may well be an example of what the Second Circuit identified as a tough case under *Feldman:* a combined adjudication and rulemaking in a single opinion. *See Zimmerman v. Grievance Com. of Fifth Jud. Dist.*, 726 F.2d 85, 86 (2d Cir.), *cert. denied*, 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 876 (1984).

The subsequent disbarment and reinstatement of Schneider and Ramos, how-

---

*land* reservation, *see England v. Louisiana Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a legal issue the court does not reach, given the jurisdictional ruling.

**2.** That the bar reform portion of the *Schneider–Ramos* proceeding was rulemaking was admitted as such by defendants in their 1982 briefs to the First Circuit, *see* Statement of Issues and Designation of Contents of Appendix (dated October 11, 1983 and filed with the First Circuit); aside from it being obviously correct, that admission is now the law of the case.

ever, constituted the end of the "particular case" aspect of *Schneider–Ramos,* so that the 1986 opinion is pure rulemaking. The mention of Schneider and Ramos by name in part E of the 1986 remedy is gratuitous, as they are already covered by the generic term "all those who have stood under the Temporary remedy decreed by this court," which is not restricted, on its face, to lawyers party to the earlier adjudications. *See* 86 J.T.S. 60, Official Translation at 23. That the remedy followed the appointment of a special master and evidentiary hearings does not make the proceeding judicial. "Most legislation is preceded by hearings and investigations." *Prentis,* 211 U.S. at 227, 29 S.Ct. at 69–70. The decision of the Puerto Rico Supreme Court to continue with the outward form of a judicial decision in a particular case is that court's prerogative; but that form is not binding on the federal courts. *See Lathrop v. Donahue, supra; In re Summers, supra; Prentis, supra.*

Furthermore, even if the 1986 remedy were construed to present *Zimmerman's* hard case, the judicial and non-judicial aspects of the opinion would be separable. The Colegio's action to force Schneider and Ramos to pay their dues is not "inextricably intertwined" in any legal or logical sense with the Puerto Rico court's bar reform (although it certainly is in a causal sense). *See Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16. Justice Holmes' declaration that federal courts should not be bound by the *form* of state action can and should be extended this far, as I think the Second Circuit would have agreed had they been forced to decide the hard case they identified. *See Zimmerman,* 726 F.2d at 86.

In the unlikely event that this conclusion is wrong as to plaintiffs Schneider and Ramos, it should be mentioned that the other plaintiffs stand on a different footing. Although Romany was subject to the original complaint filed by the Colegio in 1977, he paid his dues prior to the Puerto

Rico court's consideration of the case. Thus, he had no particular case adjudicated in a judicial proceeding that he could have appealed to the U.S. Supreme Court. Furthermore, prior to the hearing that provided the evidentiary basis for the Puerto Rico court's rulemaking, the court explicitly removed him from further participation in the case. Should he somehow be construed as having participated in the 1982 proceeding, and should the 1986 remedy somehow be construed as resulting from a judicial proceeding, Romany would still be entitled to present his case here, because he would certainly have had no standing to appeal the 1986 remedy to the U.S. Supreme Court. Finally, the rest of the plaintiffs, who were never party to the Puerto Rico court proceeding, lie completely outside of any *Rooker* problems in this case and thus obviously have standing to sue in this court to allege violations of their federal constitutional rights.

## II. *Res Judicata and Collateral Estoppel*

The Colegio contends that, even if this court has subject matter jurisdiction under the *Rooker–Feldman* doctrine, the decision of the Puerto Rico Supreme Court in *Schneider–Ramos* is res judicata to plaintiffs' claims here. This court considered this argument in its 1982 opinion, 546 F.Supp. at 1268–1274. The decision there, that the claims are not barred by the Puerto Rico court action, was not appealed, *see Romany,* 742 F.2d at 37 n. 6, and is accordingly the law of the case. *See* 18 Wright & Miller § 4478 at 801 (if a "matter is omitted from one appeal ... it may be held foreclosed on a later appeal to the same court as a matter of law of the case") and cases cited therein.[3] Nevertheless, it is worth reviewing why plaintiffs' claims are not barred by res judicata or collateral estoppel.

The federal rule regarding the preclusive effect of state court decisions is found in 28 U.S.C. § 1738, which states that "judi-

---

**3.** It is worth noting that the grounds on which the First Circuit vacated this court's earlier decision—abstention—presuppose both subject matter jurisdiction and the lack of res judicata ef-

fect of the 1982 *Schneider–Ramos* opinion on this case. *See* 18 Wright & Miller § 4478 at 789 (law of the case applies "when a court decides that an issue was resolved implicitly").

cial proceedings [of any court of any state] ... shall have the same full faith and credit in every court ... as they have by law or usage in the courts of such state...." *See, e.g., Kremer v. Chemical Construction Co.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). This means that the question of the preclusive effect of the *Schneider–Ramos* "judicial proceeding" depends on Puerto Rico law. *See Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

 Puerto Rico's res judicata rules are contained in Article 1204 of the Civil Code, 31 L.P.R.A. § 3343; which states

In order that the *presumption* of res judicata may be valid in another suit, it is necessary that, between the case decided by the sentence, and that in which the same is invoked, there be the *most perfect identity* between the things, causes and persons of the litigants, and their capacity as such.

(Emphasis supplied). The "perfect identity" requirement is the core of Puerto Rican res judicata law. If the requirements of res judicata are met, a party may not raise in the second action any "questions which could have been properly litigated and adjudicated in the former action." *Capó Sánchez v. Secretary of the Treasury*, 92 P.R.R. 817, 819 (1965). If the perfect identity requirements are not met, however, a party may still invoke the related doctrine of collateral estoppel, which precludes the relitigation by the same parties of issues "actually litigated and determined by a valid and final judgment." *Pereira v. Hernández*, 83 P.R.R. 156, 161 n. 7 (1961); *see also A & P General Contractors v. Asoc. Caná*, 110 D.P.R. 753, 10 Official Translations 984 (1981). The difference between the claim preclusive effect of res judicata and the issue preclusive effect of collateral estoppel is significant in this case because the *Schneider–Ramos* decision did not consider plaintiffs' federal claims. *See Romany*, 742 F.2d at 35. Thus, if the

*Schneider–Ramos* decision is res judicata to this case it will preclude the federal claims of the *Schneider–Ramos* parties, because the federal claims "could have been raised" in *Schneider–Ramos.*[4] *See Commonwealth v. Soc. Civil Agrícola e Industrial*, 104 D.P.R. 720, 4 Official Translations 546, 554 (1975). On the other hand, if the *Schneider–Ramos* decision has only collateral estoppel effect in this case, it will not preclude raising the federal claims here.

What is most immediately clear from the perfect identity requirement is that only Schneider and Ramos have any risk of res judicata effect, because they were the only "persons" who were the subject of the disbarment proceeding. *See Romany*, 742 F.2d at 35. The rulemaking aspect of *Schneider–Ramos* applied to the entire Puerto Rico bar, which, of course, includes all the plaintiffs, but it was not a "judicial proceeding" and, thus, does not come within 28 U.S.C. § 1738's ambit. *See Feldman*, 460 U.S. at 485–86, 103 S.Ct. at 1316 (promulgation of bar rule not a judicial proceeding). For that same reason the rulemaking is not res judicata to Schneider and Ramos, either. *See Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 7 Official Translations 795, 804 (1978) (res judicata given to administrative action "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact ..."). Thus, the inquiry here is limited to the preclusive effect of the *Schneider–Ramos* disbarment adjudication on Schneider and Ramos.

An examination of the remaining two aspects of the perfect identity requirement, "things" and "causes," leads the court to the conclusion that *Schneider–Ramos* precludes none of the claims raised in this case. Under Puerto Rico law "[t]he thing corresponds basically to the object or matter over which the action is exercised," *Lausell Marxuach v. Diaz de Yañez*, 103 D.P.R. 533, 3 Official Translations 742, 745

---

**4.** This conclusion would be different if the plaintiff's attempted *England* reservation were found to be effective, an issue which this court does not reach. *See England v. Louisiana Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

(1975),[5] while the "cause" refers to the "ground, reason or motive for the claim." *Mercado Riera v. Mercado Riera*, 100 P.R.R. 939, 950 (1972) (citing Manresa, *Comentarios al Código Civil* 237–38, 240 (5th ed. 1950)). The "thing" at issue in the disbarment proceeding was the money Schneider and Ramos had not paid the Colegio, along with their current membership in the Colegio, while the "cause" could best be described as their current obligation to pay that money and to belong to the Colegio.

The "thing" at issue in this case is the *future support*, financial and otherwise, that Schneider and Ramos will be obligated to provide the Colegio under the 1986 remedy, along with their future membership in the Colegio. This future support and membership is a different "thing" than the money and membership at issue in *Schneider–Ramos*. Similarly, the "cause" of this action is their *prospective obligation* to provide that support and belong to the Colegio, which obligation had not yet arisen when *Schneider–Ramos* was decided. Thus, Schneider and Ramos' current case lacks the "most perfect identity" with the disbarment case and, accordingly, is not precluded by that earlier case.

The civil law commentators Colin and Capitant speak directly to this point. *See* Colin and Capitant, III *Derecho Civil* 499–508 (translation of the 2d French Ed., 1960). They describe res judicata as a (nearly) irrebuttable presumption that the first court decided the case (as a whole) correctly (hence the claim preclusive effect). *Id.* at 499. This presumption applies, however, only to the rights and obligations before the first court; the presumption does not apply to rights and obligations that arise *after* the period of time that is the subject of the adjudication. *Id.* at 503. A second court may adjudicate those subsequently arising obligations, subject to the rule of collateral estoppel. "There may well be an internal logical contradiction, but no *opposition* between the two decisions, supposing they reach differ-

ent results." *Id.* at 503 (translation ours). There is no *opposition* because the second suit does not nullify any rights or obligations determined by the earlier suit. *See Mercado Riera*, 100 P.R.R. at 949–50 (one criteria for determining res judicata is whether "a different judgment in the second case would destroy or impair rights or interests established in the second"). Here, the *Schneider–Ramos* judicial proceeding determined the rights and obligations relating to Schneider's and Ramos' refusal to pay dues up to that time. Their prospective obligation to pay dues was not at issue. Of course, the legal issues involved in both retrospective and prospective determination are the same; thus the rule of collateral estoppel precludes Schneider and Ramos from raising before this court any issues actually litigated and decided in *Schneider–Ramos*.

The common law recognizes a similar relationship between successive suits concerned with obligations that arise in successive years. *See Lausell Marxuach*, 103 D.P.R. at 535, 3 Official Translations at 745 (courts may look at non-Civil Law sources for "comparative purposes" when dealing with res judicata). For example, the Supreme Court noted in *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), that "[i]ncome taxes are levied on an annual basis" and went on to hold that "[e]ach year is the origin of a new liability and of a separate cause of action.... [A] judgment on the merits is *res judicata* [only] as to any subsequent proceeding involving the same claim and the same year." *See also United States v. Rexach*, 482 F.2d 10, 19 (1st Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). For similar reasons a suit regarding an abatable nuisance is res judicata only as to subsequent proceedings involving liabilities that had accrued as of the time of the first suit. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–29, 75 S.Ct. 865, 868–69, 99 L.Ed. 1122 (1955); *see also International Harvester Co. v. OSHA*, 628 F.2d 982, 985–86 (7th Cir.1980).

---

**5.** *See also Mercado–Riera v. Mercado–Riera*, 100 P.R.R. 939, 948 (1972) (citing Scaevola, 20

*Código Civil* 534 (2d ed. 1958)) ("thing" refers to "subject matter" of the action).

Schneider and Ramos may press their federal claims before this court.

### III. *Case or Controversy*

■ The Colegio also moves to dismiss on the grounds that the plaintiffs have not presented a case or controversy. That contention is best answered by reference to this court's earlier decision on the merits, which, right or wrong, clearly indicates that the plaintiffs are bringing a case that merits judicial attention. *See Schneider v. Colegio*, 565 F.Supp. 963 (D.P.R.1983), *vacated on other grounds*, 742 F.2d 32 (1st Cir.1984). Furthermore, this court's earlier ruling on the case or controversy issue, 546 F.Supp. at 1261, which was not appealed, is also the law of this case.

### IV. *Conclusion*

The Colegio's motion to dismiss is DENIED.

IT IS SO ORDERED.